UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MONTREAVOUS GRAY,

                Plaintiff,

v.                                                  Case No. 23-cv-1669-pp

LT. FISHER, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Montreavous Gray, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On January 19, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $24.43. Dkt. No. 8. The court received that fee on January 25, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff alleges that on March 31, 2023 at 2:25 p.m., defendant Lieutenant Fisher escorted him to restricted housing for possession of a cellular phone and intoxication. Dkt. No. 1 at ¶3. Fisher allegedly placed the plaintiff in a holding cell and cuffed his left hand to a six-inch chain secured to the holding cell door. Id. The plaintiff states that he immediately told Fisher that the left cuff was too tight and was causing pain to his left wrist and hand. Id. Fisher allegedly conducted a strip search of the plaintiff while his left hand remained cuffed to the cell door. Id. at ¶4. The plaintiff states that he again complained about the cuff being too tight. Id. Fisher allegedly completed the

strip search, and the plaintiff again asked Fisher to loosen the cuff. Id. The plaintiff states that Fisher responded that the plaintiff would be okay, he wouldn't be in the holding cell for too long and Fisher left the area. Id.

The plaintiff alleges that about one hour later, at 3:30 p.m., he asked defendant Schumann to adjust the cuff because it was causing pain and numbness to his wrist and hand. Id. at ¶5. Schuman allegedly ignored the plaintiff. Id. The plaintiff allegedly asked Schumann if he could process the plaintiff into a cell in restrictive housing and Schumann replied, "Relax, you haven't been waiting that long." Id. at ¶6. The plaintiff states that he asked to speak with the sergeant. Id.

The plaintiff alleges that he then observed defendant Dr. Engstrom, who is a psychologist, talking to another incarcerated individual and he asked Dr. Engstrom to inform the sergeant and captain that the cuff on his wrist was so tight that it was causing pain and numbness to his left wrist and hand. Id. at ¶7. The plaintiff also allegedly said that he had been left in this state for several hours and felt like he was going to have an anxiety attack. Id. Dr. Engstrom allegedly informed defendant Sergeant Demurs of the plaintiff's situation. Id. The plaintiff states that Demurs arrived, looked into the plaintiff's holding cell and immediately left the area even as the plaintiff begged him to loosen the cuff or at least place him in a cell. Id. at ¶8.

The plaintiff alleges that at 4:30 p.m., he had an anxiety attack due to the pain in his wrist and hand from being cuffed to the holding cell door for two hours. Id. at ¶9. He states that other incarcerated individuals started yelling to

4

staff members that they thought the plaintiff had suffered a drug overdose when in fact he was having an anxiety attack. Id. Demurs and Lt. Swabbs (not a defendant) allegedly came to the plaintiff's cell, ordered him to get up and come to the door, and asked him what he took. Id. at ¶10. The plaintiff states that he was uncommunicative due to the anxiety attack he was suffering. Id. They allegedly entered the holding cell and placed the plaintiff in a restraint chair before taking him to the nurse station. Id. Once there, defendant Nurse Jess allegedly took the plaintiff's vitals and asked him if he had taken any drugs. Id. at ¶11. The plaintiff states that he told her he believed he was having an anxiety attack due to being restrained and suffering extreme pain to his wrist and hand for the previous several hours. Id. Nurse Jess allegedly responded that they were not there for his hand and wrist, and again demanded to know what drugs he had taken. Id. The plaintiff allegedly responded that he had not taken drugs and he begged Nurse Jess to examine his wrist, which was swelling and the skin was broken. Id. Nurse Jess allegedly told Swabbs and Demurs to take the plaintiff back to the holding cell. Id. The plaintiff alleges that he was taken back to the holding cell where he was restrained with cuffs around both wrists; the cuffs were attached to a six-inch chain attached to the holding cell door. Id. at ¶12.

The plaintiff alleges that at 6:06 p.m., defendant CO Lange escorted him to a restrictive housing unit cell. Id. at ¶13. He states that he immediately informed Lange that he needed medical attention for his left wrist and hand,

which were bruised and swollen. Id. Lange allegedly said that he would let somebody know. Id.

The plaintiff states that the next morning—April 1, 2023, at 6:06 a.m.—he told defendant Officer Russell that he needed medical attention for his wrist and hand. Id. at ¶14. He states that he showed Russell that his wrist and hand were swollen and bruised and Russell said that he would let somebody know. Id. The plaintiff states that around 10:00 a.m., he asked Russell if he was going to receive medical attention; he asked again at 11:45 a.m. and 1:00 p.m. Id. The plaintiff alleges that he "then made a statement to the effect that 'he could be in here hanging,' asking if it was necessary to harm himself in order to get medical attention." Id. Russell allegedly then informed defendant Captain Karnird that the plaintiff was suicidal. Id. The plaintiff alleges that Karnird interviewed the plaintiff in a holding cell regarding his "supposed suicidal status." Id. at ¶15. The plaintiff states that he told Karnird that his wrist was in pain, bruised and swollen, and that he needed medical attention. Id. Karnird allegedly said that he would inform medical staff of the plaintiff's ailment and then placed him in an observation cell. Id.

The next day, April 2, 2023, Dr. Engstrom allegedly evaluated the plaintiff regarding his "supposed suicidal status." Id. at ¶16. The plaintiff states that he repeated his request for medical attention and described to Dr. Engstrom what had occurred. Id. The plaintiff asserts that Dr. Engstrom kept the plaintiff on observation status and told him that security staff would be able to fill out a health service request for him regarding his wrist. Id. The

6

plaintiff alleges that when he later saw Nurse Meg (not a defendant) and defendant Officer Stevenson doing medication and observation rounds, he showed them his wrist and hand, asked for medical attention and requested that photographs be taken of his injuries. Id. at ¶17. Nurse Meg allegedly said she would come back and take photos of the plaintiff's injuries, but she did not do so. Id. Stevenson allegedly said he would come back and fill out a health service request for the plaintiff's injuries, but he never did. Id. at ¶18.

The plaintiff alleges that on April 3, 2023, he was removed from observation and placed back in restrictive housing. Id. at ¶19. He says he asked the officer who moved him for a health service request, but that officer denied the request, stating that she was only a transport officer. Id.

Two days later, on April 5, 2023, the plaintiff states that he was finally able to submit a health service request in which he wrote that he needed medical attention for his injured wrist and hand and documented the continuous denial of care for the same over the previous six days. Id. at ¶20. On April 6, 2023, defendant Nurse York allegedly signed the health service request which reflected that the plaintiff had been scheduled to be seen by health service staff. Id.

The plaintiff alleges that on April 14, 2023, he filed an administrative complaint (WCI-2023-5387) stating that he had been cuffed to a holding cell door for four hours. Id. at ¶21. The plaintiff states that the complaint examiner, defendant Moon, recommended that the complaint be dismissed "citing that the degree of restraint imposed on [the plaintiff] was due solely to his

7

uncooperative actions, and alleging that [he] lied about the length of the same restraint. Id. at ¶22. The plaintiff states that in his appeal he pointed out that Moon had misstated the facts. Id. at ¶23.

The plaintiff alleges that on April 18, 2023, he filed an administrative complaint (WCI-2023-5660) in which he complained that he was not receiving medical attention for his injured hand and wrist. Id. at ¶25. Moon allegedly rejected this complaint and the reviewing authority, defendant R. Weinman, rejected the plaintiff's appeal as moot. Id. The plaintiff states that on June 22, 2023, he filed an administrative complaint regarding Weinman's failure to uphold his ethical oath of office "by inadequately investigating complaint 2023-5660 and instead relying upon matters that weren't an issue of evidence to deliberately deny [the plaintiff] his right to due process." Id. at ¶26.

The plaintiff alleges that on June 20, 2023, he was admitted to the Fond du Lac Regional Clinic where he was seen by a doctor for numbness and tingling in his left fingers and hand. Id. at ¶27. He allegedly received neurological tests and it was determined that he was suffering from carpal tunnel syndrome. Id.

The plaintiff states that after submitting multiple health service requests from June 2023 through September 18th, 2023, requesting treatment for his hand and wrist injury, he was issued diclofenac-sodium topical gel, which was not effective in treating his pain, followed by Aspercreme, which was not effective, and Lidocaine, which also was not effective. Id. The plaintiff states that on September 18, 2023, he was seen by a physical therapist who provided

him with a splint and stated that no follow-up therapy would be necessary. Id. at ¶28.

The plaintiff claims that Waupun staff, "through their actions and inaction, injured [his] left hand and wrist by cuffing the same to a six-inch chain secured to a holding cell door for four hours" and by their "refusal to provide medical treatment in a timely or adequate fashion." Id. at ¶29. For relief, the plaintiff seeks compensatory and punitive damages. Id. at ¶32.

C. Analysis

The plaintiff's allegations that he remained cuffed to the cell door amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, an incarcerated person must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires the plaintiff to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that Fisher placed the handcuff on too tightly and would not adjust it despite the plaintiff asking him several times. The plaintiff

9

also alleges that Schumann and Demurs did not adjust the cuff after the plaintiff told him it was too tight and was causing pain and numbness to his left wrist and hand. The plaintiff may proceed against Fisher, Schumann and Demurs in their individual capacities. See Ajala v. Tom, 658 F. App'x 805, 807 (7th Cir. 2016) (quoting Stainback v. Dixon, 569 F.3d 767, 772 (7th Cir. 2009) and citing cases recognizing that "'an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury'").

The plaintiff also alleges that defendants refused to provide him medical care for his injury. A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle, 429 U.S. at 104-05). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez, 792 F.3d at 776). The plaintiff may proceed on medical care claims against defendants Demurs, Jess, Lange, Russell, Karnird, Stevenson and Engstrom in their individual capacities based on allegations that they did not obtain care for the plaintiff's injured hand and wrist.

The plaintiff has not stated a claim against defendant Nurse York because he alleges only that on April 6, 2023, York allegedly signed the health service request which indicated that the plaintiff had been scheduled to be

seen by health service staff. This allegation does amount to a claim that York acted with deliberate indifference to the plaintiff's injury. The plaintiff also has not stated a claim against defendants Moon and Weinman for their involvement in processing his administrative complaints about the incident. See Owens v. Evans, 878 F.3d 559, 563 (7th Cir. 2017) (citing Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001) and Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)); see also Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). The court will dismiss defendants York, Moon and Weinman.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that defendants York, Moon and Weinman are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Fisher, Schumann, Engstrom, Demurs, Jess, Lange, Russell, Karnaird and Stevenson. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$325.57** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an

11

amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Waupun Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 3rd day of May, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**